IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

RANDY WARREN JEFFERSON

    Petitioner,

v.                                     CIVIL ACTION NO. 2:15-cv-450

HAROLD W. CLARKE, Director,
Virginia Department of Corrections,

    Respondent.

## REPORT AND RECOMMENDATION

This matter is before the Court on *pro se* Petitioner Randy Warren Jefferson's ("Jefferson") Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, ECF No. 1, and the Respondent's Motion to Dismiss, ECF No. 5. The matter was referred for a recommended disposition to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and Jefferson's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### I. FACTUAL AND PROCEDURAL BACKROUND

On July 3, 2012, Investigator Allison of the Norfolk Police Department responded to a narcotics complaint to a suspected drug house in a high crime area in the City of Norfolk. ECF

1

No. 7 attach. 3 at 2. Investigator Allison came across a parked Kia Optima with a female in the driver's seat and Jefferson in the passenger seat. *Id.* Allison observed a Dodge Charger pull into the parking lot and Jefferson drop something through the Dodge's passenger window before returning to the Kia. *Id.* When the driver of the Kia pulled out of the parking lot, Allison noticed the center high mount stop light did not illuminate when the driver applied the brakes. *Id.* Allison pulled over the vehicle and noted the driver and Jefferson appeared nervous. *Id.* During the traffic stop Jefferson reached his hand toward his right pocket and Allison told him not to reach into his pockets. *Id.* Allison asked Jefferson to step out of the vehicle and patted him down for weapons. *Id.* An additional officer then arrived with a narcotics dog that alerted Allison to sixty-four capsules of heroin and $585. *Id.*

Charged with multiple offenses, prior to trial in the Circuit Court of the City of Norfolk, Jefferson moved to suppress the heroin capsules arguing (1) Allison lacked reasonable suspicion to stop the vehicle and initiate a traffic stop because the center high mount stop light did not illuminate and (2) Allison lacked reasonable suspicion that Jefferson possessed drugs or carried a weapon before he was patted down. ECF No. 7 attach. 3 at 2-3. The Circuit Court denied Jefferson's motion "[r]elying on Allison's belief that a narcotics transaction had just occurred." *Id.* at 3.

Jefferson pled guilty, but later moved to withdraw his guilty plea at sentencing. *Id.* at 3. The Circuit Court denied his motion to withdraw, and on October 24, 2012 found him guilty of possession of heroin with intent to distribute, in violation of Virginia Code § 18.2-248. ECF No. 7 attach. 1 at 1. Jefferson was also found in violation of previously suspended sentences for possession of a firearm by a convicted felon under Virginia Code § 18.2-308.2, possession of cocaine with intent to distribute under Virginia Code § 18.2-248, and possession of heroin with

intent to distribute under Virginia Code § 18.2-248. ECF No. 7 attach. 2 at 1. On February 26, 2013, the trial court sentenced Jefferson to a total of ten years in prison and found him in violation of his previously suspended sentences, resulting in an active sentence of thirteen years. *Id.* at 1-3.

Jefferson appealed to the Court of Appeals of Virginia where he argued the Circuit Court improperly denied his motion to suppress. ECF No. 7 attach. 3 at 1, 3. Jefferson argued that Allison improperly pulled him over for having an inoperable center high mount stop light since Virginia Code § 46.2-1014 requires that a driver have two working brake lights, which the driver of the Kia had. *Id.* at 3. Jefferson also contended that Allison lacked reasonable suspicion that he possessed narcotics or carried a weapon to justify his pat down. *Id.* at 4.

On September 11, 2013, the Court of Appeals refused Jefferson's appeal and concluded the Circuit Court properly denied Jefferson's motion because even though the car had two working brake lights, Allison had reasonable suspicion to stop the car for having a defective center high mount stop light, in violation of Virginia Code § 46.2-1003. *Id.* Additionally, the Court of Appeals determined that Allison "was justified in conducting a brief investigation and limited pat down" because he "had a reasonable suspicion that [Jefferson] had been engaged in criminal activity and may have been armed" after Jefferson appeared nervous, reached into his right pocket, and was found in "an area known for drug activity." *Id.* at 5. Subsequently, on January 21, 2014, the Supreme Court of Virginia refused Jefferson's appeal. ECF No. 7 attach. 4.

On October 8, 2015, Jefferson filed the instant Petition alleging two claims for federal habeas relief:

1. Unlawful Stop: "Allison stopped the Kia in which Jefferson was riding ostensibly because the brake light above the trunk was inoperable, even though the two brake lights on the respective edges of the car were working. Va. Code Ann. § 46.2-1014 provides that only two operable brake lights are required for a motor vehicle being operated on a highway within the Commonwealth."

2. Unreasonable Search: "Allison, though, suspected that Jefferson was dealing drugs mostly because the event occurred in an area of high drug activity…Any such activity in a supposed 'high drug trafficking area' is not sufficient to give an officer a reasonable suspicion of criminal activity."

ECF No. 1 at 17, 19.

The Virginia Attorney General, on behalf of the Respondent, filed a Rule 5 Answer, Motion to Dismiss, brief in support, and *Roseboro* Notice on March 15, 2016. ECF Nos. 5-8. Specifically, Respondent argued that Jefferson's petition was untimely and that he did not qualify for statutory or equitable tolling in part because he did not reach out to his appellate counsel regarding the final order for over a year. ECF No. 7 at 3. Respondent also stated that even if Jefferson's petition was timely, his claim is barred by *Stone v. Powell*, 428 U.S. 465 (1979), as Jefferson already had an opportunity to argue his Fourth Amendment claims in the state proceedings. *Id.* at 5-7.

Anticipating timeliness was an issue, Jefferson acknowledged in his Petition that his filing was untimely because his "appellate counsel did not send [him] a copy of the [January 21, 2014] final order …until January 26, 2015." *Id.* at 13. Jefferson wrote to his appellate counsel after he was concerned he had not received the final order, and on January 26, 2015, a representative from appellate counsel's former law firm mailed Jefferson a copy of the final

order along with a letter. *Id.* at 21. The letter explained that the representative believed appellate counsel had mailed Jefferson a copy of the order to the Norfolk City Jail in February 2014, but that appellate counsel could not offer legal advice because he had begun an appointment as a judge in the Norfolk General District Court in December 2014. *Id.* Jefferson denied receiving the final order while he was in the Norfolk City Jail. *Id.* at 13.

On April 11, 2016, Jefferson filed a response in opposition to the Respondent's motion to dismiss. ECF No. 9. Jefferson contended he failed to contact appellate counsel since his counsel "advised [him] to be patient because the court had many cases to decide, and that it would take some time for the appellate court to rule on the appeal." *Id.* at 1. Jefferson did not represent when this communication occurred. *Id.* Jefferson represented that after waiting over a year, he wrote a letter to his counsel asking for an update on his case, to which his appellate counsel's representative notified him the Supreme Court of Virginia refused his appeal. *Id.* In his response, Jefferson also argued that his claim is not barred by *Stone v. Powell* because he did not receive a "fair and impartial hearing on his Fourth Amendment claim" since the state court failed to exclude the evidence from his search and the "officers who conducted the illegal search and seizure did not act in good faith." *Id.* The instant Petition and Motion to Dismiss are ripe for recommended disposition.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Statute of Limitations

Section 2254 petitions are subject to a one-year statute of limitations and must be dismissed if they are filed later than one year after the conclusion of direct review of the conviction or the expiration of the time to seek direct review, or the factual predicate of the claim

being asserted in the petition could have been discovered with due diligence, whichever is the latest.[1] 28 U.S.C. § 2244(d)(1)(A), (D).

Jefferson's conviction became final and, pursuant to 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitations began to run on April 21, 2014, ninety days after the Supreme Court of Virginia refused his direct appeal. *See* Sup. Ct. Va. r. 5A:6; Sup. Ct. Va. 13. Jefferson filed the Petition on October 8, 2015, approximately a year and five months after the judgment became final. To explain his delay in filing, Jefferson claimed that he should be afforded equitable tolling because his attorney did not notify him until January 26, 2015 that the Supreme Court of Virginia denied his claim one year earlier. ECF No. 1 at 13. Accordingly, this Court must consider whether his Petition may be saved by the application of statutory or equitable tolling.

### *1. Statutory Tolling*

Generally, the limitation period for filing a § 2254 petition is tolled during the time in "which a *properly* filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2) (emphasis added). To be properly filed, the petition must comply with the state's procedural rules imposed on post-conviction petitions, *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005) (denying statutory tolling to an improperly filed petition because the state court rejected the petition as untimely), and violation of those rules, including "time limits, place for filing and filing second or successive petitions," will render that petition improperly filed and ineligible for statutory tolling, *Rodgers v. Angelone*, 113 F. Supp. 2d 922, 929 (E.D. Va. 2000). Jefferson did not file a state habeas petition so he does not meet any of the statutory exceptions for untimely filing. Thus, the undersigned **FINDS** that Jefferson is not entitled to statutory tolling.

---

[1] 28 U.S.C. § 2244(d)(1)(B) and (C), which address other means by which to calculate the one-year statute of limitations, are not applicable here and will not be discussed.

*2. Equitable Tolling*

A habeas petition ineligible for statutory tolling may be entitled to equitable tolling. *Rouse v. Lee*, 339 F.3d 238, 246-47 (4th Cir. 2003). Jefferson impliedly conceded that his claim is time barred, but argued that he should be afforded the benefit of equitable tolling:

> Petitioner's Counsel failed to provide him with the 'Final Order' of the Supreme Court of Virginia in a timely manner. Counsel advised Petitioner to be patient because the court had many cases to decide, and that it would take some time for the appellate counsel to rule on the appeal.

ECF No. 9 at 1. According to Jefferson, for this reason, he waited until January 2015 to reach out to his attorney regarding the status of his appeal. *Id.* As a result of this inquiry, Jefferson claimed he was finally provided a copy of the Supreme Court's January 21, 2014 decision on January 26, 2015. *Id.*; ECF No. 1 at 21.

A court will equitably toll the limitation period in "rare instances where–due to circumstances external to the party's own conduct–it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000) (holding that Courts should only equitably toll the statute of limitations in rare situations "lest circumstances of individualized hardship supplant the rules of clearly drafted statutes."). A petitioner is eligible for equitable tolling if he demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010). To do so, a petitioner must present "(1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse*, 339 F.3d at 246. There are rare and specific circumstances that warrant equitable tolling of the one-year statute of limitations period. *See Holland*, 560 U.S. at 649 (finding that egregious conduct by counsel, meaning knowing or reckless factual misrepresentation or exhibited dishonesty, may

7

warrant equitable tolling). Moreover, "[p]rinciples of equitable tolling do not extend to garden variety claims of excusable neglect," but instead must include more culpable attorney misconduct. *Rouse*, 339 F.3d at 246 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Jefferson claimed in his response in opposition to Respondent's motion to dismiss that his appellate counsel told him "to be patient" and wait for the Supreme court's decision, and that "it would take some time for the appellate court to rule on the appeal," but he provided no affidavit attesting to this communication, no details as to when this purported communication took place, and no written evidence of such communication. ECF No. 9 at 1. Conversely, he provided a letter from his counsel's former law firm advising that they believed Jefferson had been provided a copy of the final order in February 2014. ECF No. 1 at 21.

Nonetheless, extraordinary circumstances are not present even when counsel fails to update petitioners on the status of their appeals because petitioners can access that information since it is public record. *See, e.g., Sauls v. Mathena*, No. 2:12cv279, 2013 WL 5423817, at *6 (E.D. Va. Sept. 25, 2013) ("[D]ue diligence required [petitioner] to seek this information, a matter of public record, directly from the Virginia Supreme Court, particularly after a certain period of time had lapsed without receiving a response from his counsel."); *Artis v. Clarke*, No. 3:11cv721, 2012 WL 1427873, at *5 (E.D. Va. Apr. 24, 2012) ("When the public record contains the status of an appeal, a petitioner's mere attempts to contact his . . . attorney about the status of that appeal fails to constitute due diligence. After receiving no response from his attorney for months, due diligence required that [the petitioner] contact the Court of Appeals to inquire about the status of his direct appeal.") (citations omitted).

8

Furthermore, Jefferson's unsworn representation standing alone is insufficient to carry his burden to establish that he was not provided with the final order in a timely fashion, and that extraordinary circumstances beyond his control justifies the exceptional remedy of equitable tolling. *Greene v. Clarke*, No. 2:12cv490, 2014 WL 198717, at *7 (E.D. Va. Jan. 15, 2014) (determining that the petitioner's "threadbare and conclusory statement" that he was mentally incompetent did not justify equitable tolling); *Morrill v. Clarke*, No. 2:13cv177, 2013 WL 6408360, at *5 (E.D. Va. Dec. 6, 2013) (concluding that petitioner's "conclusory statements" that he was innocent did not demonstrate extraordinary circumstances for equitable tolling).

The one-year statute of limitations would have begun to run on April 21, 2014, when Jefferson's conviction became final, and expired on April 20, 2015. Jefferson did not file his petition until October 8, 2015. Jefferson is not entitled to any statutory tolling since he did not file a state habeas petition. Jefferson also is not entitled to equitable tolling. Therefore, the undersigned **FINDS** that Jefferson's Petition is untimely and recommends that the Petition be **DISMISSED**. However, even if the Court were to find that equitable tolling was appropriate, Jefferson's Petition should be dismissed on the merits.

### B. Merits

Under *Stone v. Powell*, federal courts may not grant federal habeas relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at petitioner's trial when the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim. 428 U.S. at 482. When faced with allegations presenting Fourth Amendment claims, a federal district court should "first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice." *Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir.1978) (capitalization corrected). The district

court, however, "need not inquire further into the merits" of the case unless the petitioner "alleges something to indicate that his opportunity for full and fair litigation of [his claim] was in some way impaired." *Id.* Consequently, as long as the petitioner had an opportunity to litigate his Fourth Amendment claim in the state court, it matters not whether he proffers a new and different basis for that claim in the federal court.

*Stone v. Powell* forecloses Jefferson's attempt to re-litigate his claims in his federal district court habeas petition. Jefferson filed a motion to suppress at trial and the court denied the motion after a hearing. ECF No. 7 attach. 5 at 2-3. Jefferson also fully argued on direct appeal to the Court of Appeals of Virginia that he was improperly stopped and searched. ECF No. 7 attach. 3 at 3-5. Jefferson claimed in his instant Petition that Investigator Allison lacked reasonable suspicion to stop the car he was riding in because it had two operable brake lights, and that he lacked reasonable suspicion to pat Jefferson down solely because he was in a "high drug trafficking area." ECF No. 1 at 17, 19. However, the Court of Appeals fully addressed each claim and issued a reasoned decision on the merits, denying both claims. ECF No. 7 attach. 3 at 3-5. The Court of Appeals concluded Allison had reasonable suspicion to stop the car for having a defective center high mount stop light, in violation of Virginia Code § 46.2-1003, and Jefferson was patted down because he appeared nervous, reached into his right pocket, and was present in "an area known for drug activity." *Id.* Therefore, Jefferson litigated his claims in state court, and it would be improper for this Court to reconsider his claims unless Jefferson lacked an "opportunity for full and fair litigation." *Doleman*, 579 F.2d at 1265.

Jefferson argued that he did not receive a fair and impartial hearing because the state court did not exclude the evidence from his search and the "officers who conducted the illegal search and seizure did not act in good faith." ECF No. 9 at 1. First, merely because his

suppression motion was denied does not mean Jefferson was denied a fair and impartial hearing. Second, Jefferson failed to provide any additional information as to the officers' lack of good faith besides this conclusory statement. Jefferson had the opportunity to present evidence on the officers' purported bad faith at the motion to suppress hearing at trial and in his appeal to the Virginia Court of Appeals and the Supreme Court of Virginia. Without any additional evidence as to why the trial was not fair and impartial, *Stone v. Powell* precludes Jefferson from obtaining habeas relief on his Fourth Amendment claims, and therefore the undersigned **RECOMMENDS**, in the alternative, that Jefferson's Petition should be **DISMISSED** on that basis.

## III. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that the Respondent's Motion to Dismiss, ECF No. 5, be **GRANTED**, and that Jefferson's Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Jefferson is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is

made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the Petitioner and counsel of record for the Respondent.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 12, 2016